IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Pepper Construction Company of Ohio, LLC, | : | Case No. 1:26-cv-128 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | Order Staying Action |
| Irons USA, Inc., | : | |
| Defendant. | : | |

In this unusually postured case, the Plaintiff filed two separate lawsuits against the same Defendant and over the same dispute in two separate forums. The first lawsuit was filed in Canada and the second was filed in this federal district court. Currently before the Court is Defendant's well-taken Motion to Stay (Doc. 15) this action in light of the first-filed Canadian lawsuit.[1] For the reasons that follow, Defendant's Motion will be **GRANTED**, and the case will be stayed pending the outcome of the parallel Canadian proceeding.

## I. BACKGROUND

### A. Allegations

Pepper Construction Company of Ohio, LLC ("Pepper") filed this action against Irons USA, Inc. ("Irons") in federal court in the United States District Court for the Southern District of Ohio (the "Federal Action") after an alleged breach of a trade contract (the "Subcontract"). (Docs. 4, 4-1.) Pepper is an Ohio limited liability company with its principal place of business in Chicago, Illinois. (Doc. 4 at PageID 6.) Pepper provides construction management and general

[1] Also pending before the Court is Defendant's Motion to Correct the Docket to reflect a new Answer date. (Doc. 14.) As the case will be stayed, the Motion (Doc. 14) is **DENIED AS MOOT** without prejudice to refiling once the stay is lifted.

contracting services for major developers in Ohio. (*Id.*) Irons is a foreign corporation incorporated pursuant to the laws of the Province of Alberta, Canada, with its principal place of business in Alberta. (*Id.*)

Pepper alleges that on January 18, 2023, it entered into a contract with Colerain Township, Ohio, whereby Pepper agreed to provide construction management services for the construction of two firehouses: Colerain Fire Station 26 and Colerain Fire Station 102, both in Colerain Township, Ohio (the "Project"). (*Id.* at PageID 7.) In September 2023, Pepper entered into the Subcontract with Irons for subcontractor services in connection with the Project. (*Id.*; Doc. 4-1 at PageID 15.) Pursuant to the Subcontract, Irons agreed to furnish pre-engineered metal work in relation to the Project (the "Work"). (Doc. 8 at PageID 7.) Pepper alleges that the parties agreed that:

> a. Irons USA would complete the Work in a good and workmanlike manner, and in accordance with applicable codes, laws, specifications and industry standards;
> b. Irons USA would complete the Work on or before July 19, 2024;
> c. Irons USA would complete the Work in accordance with the Project schedule, and that Irons USA would indemnify Pepper Construction for any loss or damages caused by such failure;
> d. Irons USA would promptly disburse sums owed to subcontractors and material suppliers upon payment from Pepper Construction;
> e. In the event that Irons USA was terminated for default, Irons USA would indemnify Pepper Construction for all losses, damages, expenses, and legal fees suffered as a result of Irons USA's acts or omissions;
> f. In the event that Irons USA was terminated for default, Pepper Construction would be entitled to complete the Work and correct any defective Work and charge the costs of the same against the balance of any sums due to Irons USA; and
> g. Pepper Construction would be entitled to its reasonable attorneys' fees should it prevail in any legal proceeding commenced between the parties.

(*Id.* at PageID 7–8.)

In November 2023, Irons represented to Pepper that Irons needed to secure materials from a third party supplier, Metal Building Components, to complete the Work under the Subcontract. (*Id*. a PageID 8.) In December of 2023, Pepper allegedly relied upon that representation and remitted payment of $387,491.99 to Irons for the purchase of the aforementioned materials from Metal Building Components. (*Id*.) Pepper alleges that Irons either obtained materials from Metal Building Components but failed to remit payment to Metal Building Components for the same or failed to obtain the materials and improperly retained the $387,491.99 for itself. (*Id*.)

Pepper alleges that shortly after receipt of the aforementioned payment, Irons "shirked and otherwise breached its obligations under the Subcontract." (*Id*.) For instance, Irons submitted several pay applications for materials from other third-party suppliers, despite failing to provide the requisite waivers contemplated by the Subcontract. (*Id*. at PageID 9.) In January 2024 and June 2024, Irons allegedly unilaterally asserted new completion deadlines for the Work, and still failed to meet those new deadlines. (*Id*.) On June 27, 2024 and August 6, 2024, Pepper issued written notices of default to Irons, informing Irons of its failure to meet its obligations under the Subcontract. (*Id*.) The obligations included Irons's obligations to secure materials for its performance of the Work and its obligations to perform in accordance with a set schedule. (*Id*.) Pepper alleges that Irons failed to cure its default, and so on August 16, 2024, Pepper terminated the Subcontract in accordance with the termination and notice provision of the Subcontract. (*Id*.) By the date of termination, Irons allegedly had failed to complete the Work. (*Id*.)

However, Pepper still needed to complete the Project, including the incomplete Work by Irons. (*Id*.) Consequently, Pepper hired new subcontractors to complete the Work. (Id.)

Pepper incurred costs, including costs for new subcontractors, increased labor charges, and charges levied against in for the delay. (*Id.*) Pepper asserts that it has been damaged in amount exceeding $1,389.577.00 as a result of Irons's breaches and conduct. (*Id.* at PageID 10.)

**B. Procedural History**

**1. The Canadian Action**

On November 21, 2025, Pepper brought an action in the Court of King's Bench of Alberta Canada against Irons for breach of the Subcontract in the case of *Pepper Construction Company of Ohio, LLC v. Irons USA Inc.*, Court of King's Bench, Action No. 2503 23936 (the "Canadian Action"). (Canadian Statement of Claim, Doc. 13.) The Statement of Claim very closely mirrors the Complaint filed in the Federal Action and alleges the same timeline of events and alleged breaches. (*Id.*) Pepper alleges Irons was negligent and breached its duties as a trustee, or in the alternative, that Pepper is entitled to a constructive trust. (*Id.* at PageID 98–99.) Pepper also alleges negligent misrepresentation, conversion, and unjust enrichment. (*Id.* at PageID 99.) Pepper seeks judgment in the amount of $1,389,577 and interest along with other remedies available under the law. (*Id.* at PageID 99–100.)

On December 23, 2025, Irons filed a Statement of Defense and Counterclaim asserting that Pepper breached the Subcontract and acted in bad faith. (Doc. 13 a PageID 102–29.) Irons alleges that Pepper failed to pay invoices, failed to release a builder's lien, and that Pepper initiated change orders which caused Irons damages totaling $1,164,996.21. (*Id.* at PageID 118–29.) On January 21, 2026, Pepper filed a Defense to the Counterclaim. (Doc. 23-1.) As of October 7, 2026, no further filings had occurred in the Canadian Action. (*See id.*)

### 2. The Federal Action

On February 5, 2025, Pepper filed a second lawsuit, which is this Federal Action. (Doc. 4.) Pepper alleges four causes of action: (1) breach of contract; (2) indemnity; (3) conversion; and (4) fraud. (*Id.* at PageID 10–12.)

On April 6, 2026, Irons filed a Motion to Stay this action, to which Pepper responded on May 18, 2026, and Irons replied on May 29, 2026. (Docs. 14, 20, 22.) The matter is now ripe. For the reasons that follow, Irons's Motion to Stay is well-taken and will be **GRANTED**.

## II. LEGAL STANDARD

Irons moves this Court to stay proceedings under its inherent authority[2] and pursuant to the abstention doctrine. The *Colorado River* abstention doctrine is a "narrow exception" to the "virtually unflagging obligation of the federal courts to exercise jurisdiction[,]" permitting federal courts to abstain from hearing a case because there is similar litigation pending in state court. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817–18 (1976); *Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004). The *Colorado River* doctrine permits abstention based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River,* 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)

[2] The principle of international comity is "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws*."* *Caspian Invests., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 883–84 (S.D.N.Y 1991) (quoting C*unard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 456 (2nd Cir. 1985)). In *Caspian*, the court noted that the Supreme Court had yet to articulate a standard for dismissing a diversity case in favor of a parallel suit pending in a foreign forum and determined the relevant factors to consider in determining whether to dismiss or stay a federal action because of litigation in an overseas forum includes: (1) the similarity of the parties and issues involved; (2) the promotion of judicial efficiency; (2) the adequacy of relief available in the alternative forum; (4) the considerations of fairness to all parties and possible prejudice to any of them; and (5) the temporal sequence of filing for each action. *Id.* at 884 (citing *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 318 (S.D.N.Y. 1986)).

(internal quotations removed)). The Sixth Circuit has held that a stay, rather than dismissal without prejudice, is required in *Colorado River* abstention cases. *Bates*, 122 F. App'x at 809.

The Sixth Circuit has yet to rule directly on whether the abstention doctrine set forth in *Colorado River* applies when a similar proceeding is pending in a foreign court. *See S2 Yachts, Inc. v. ERH Marine Corp.,* 855 F. App'x 273, 279 (6th Cir. 2021) ("[W]hether *Colorado River* abstention applies to foreign proceedings is still an open question in our circuit."). "However, the Sixth Circuit noted that, while 'abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it . . . in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction.'" *Zones LLC v. Yousaf*, No. 2:24-cv-12773-TGB-APP, 2025 WL 2773129, at *3 (E.D. Mich. Sept. 26, 2025) (quoting *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (internal quotations and citations omitted)). Further, "the Sixth Circuit has repeatedly applied the *Colorado River* doctrine to evaluate whether a lower court's decision to abstain was proper." *Id.* (citing *Answers in Genesis*, 556 F.3d at 467 (applying *Colorado River* factors to determine if abstention was warranted where litigation was pending in a foreign court); *S2 Yachts*, 855 F. App'x at 279 ("The district court accordingly did not err in electing not to abstain from exercising its jurisdiction pursuant to *Colorado River*."); *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557–58 (6th Cir. 2013) (reversing abstention decision in international case because the court did not sufficiently explain how the *Colorado River* factors weighed in favor of abstention)).

District courts within the Sixth Circuit have applied the *Colorado River* doctrine to determine whether to abstain from exercising jurisdiction when a parallel foreign proceeding is concurrently unfolding. *See id.* at *3–13; *Grammar, Inc. v. Custom Foam Sys., Ltd.*, 482 F.

Supp. 2d 853, 857 (E.D. Mich. 2007). Based upon the Sixth Circuit's application of the *Colorado River* doctrine thus far and other district courts' use of the *Colorado River* doctrine in analogous circumstances, the Court will apply the *Colorado River* abstention doctrine to this case.

The *Colorado River* analysis has two steps. *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 393 (6th Cir. 2019). First, a court must determine whether the concurrent actions are parallel. *Id.* Second, if they are parallel, a court weighs the eight *Colorado River* factors to determine whether abstention is warranted. *Id.* These factors are: (1) whether the foreign court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) the source of governing law; (6) the adequacy of the foreign court action to protect the federal plaintiff's rights; (7) the relative progress of the two proceedings; and (8) the presence or absence of concurrent jurisdiction. *Id.* at 395 (modified to reflect foreign, as opposed to state, considerations). A decision to abstain "does not rest on a mechanical checklist, but on a careful balancing of the important factors, as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). No one factor is determinative. *Colo. River*, 424 U.S. at 818–19.

## III. ANALYSIS

### A. Parallel Proceedings

In determining the threshold question of whether the concurrent actions are parallel, a court should consider whether the parties are "substantially similar" and the claims are "predicated on the same allegations as to the same material facts." *Romaine v. Compuserve*

*Corp.*, 160 F.3d 337, 340 (6th Cir. 1998). "'[E]xact parallelism' is not required; '[i]t is enough if the two proceedings are substantially similar.'" *Id.* (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). Doubts regarding whether the two actions are parallel should be resolved in favor of exercising jurisdiction. *Chellman-Shelton v. Glenn*, 197 F. App'x 392, 395 (6th Cir. 2006) (citing *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005)). Here, the Court has no question that the Canadian Action and Federal Action are parallel. The two actions arise from the same body of facts. The language of the Complaint and Statement of Claim are nearly verbatim and allege the same timeline of events leading to the alleged breach of the parties' Subcontract. In both, Pepper seeks recovery for a breach of a contract between the parties, asserting that Irons did not live up to its end of the bargain, which caused damages. The actions are parallel.

Pepper argues that the cases are not substantially similar because Irons has asserted a Counterclaim in the Canadian Action for breach of the Subcontract, including for unpaid invoices, and bad faith, whereas in this Federal Action, no Answer or Counterclaim has yet been filed. (Doc. 13 at PageID 118–29.) Because of the earlier procedural posture in this forum, Irons has not yet answered or asserted any counterclaim. Pepper argues that the Counterclaim is based upon different facts than those it relies upon in its Complaint (and Statement of Claim).

Exact parallelism is not required. In evaluating a similar argument, the district court in the Eastern District of Michigan rejected the argument that the presence of a counterclaim in a foreign Canadian proceeding did not give the other party the right to bring an entire proceeding in the United States Court, as "the requirement for abstention purpose is not that the cases be precisely parallel, but 'substantially similar.'" *Grammar*, 482 F. Supp. 2d at 858. The same is true here. The Counterclaim in the Canadian Action arises from the same body of facts and

dispute over the Subcontract and who breached it. Further, Irons would still have the opportunity in this case to assert a counterclaim if the case proceeds. Thus, the presence of a Counterclaim in the Canadian forum here does not undercut the conclusion that the two actions are substantially similar and therefore parallel proceedings.

### B. *Colorado River* Factors

Having determined that the two lawsuits are parallel, the Court will now address the *Colorado River* factors. On balance, these factors favor abstention.

#### 1. Neither Court Has Assumed Jurisdiction Over Res or Property

The parties agree that the first factor weighs against abstention as neither this Court nor the Canadian court has assumed jurisdiction over any res or property at issue. The Sixth Circuit has held that where no property is at issue, this factor weighs against abstention. *Romine,* 160 F.3d at 341; *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 395 (6th Cir. 2017) (holding that "the first factor weighs against abstention, as the state court has assumed jurisdiction over no property in this case"). Thus, the first factor weighs against abstention.

#### 2. Whether the Domestic Forum is Less Convenient

With respect to the second factor, Work on the Project was performed in Colerain Township, Ohio, which is located in the Southern District of Ohio. Yet, on the other hand, Pepper selected Canada as its preferred forum when first filing suit there prior to initiating the underlying lawsuit. Further, Canada is also more convenient for Irons, which is located in Alberta, Canada. Given Pepper's demonstrated preference for Canada in first filing suit there as well as Irons' location there, this factor weighs in favor of abstention.

#### 3. Avoidance of Piecemeal Litigation

The third factor, risk of piecemeal litigation, weighs in favor of abstention and is a particularly important consideration. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine,* 160 F.3d at 341. Pepper selected a foreign forum in filing its first lawsuit over the parties' dispute. Pepper then chose to file a second lawsuit here while its initial suit remains pending. Irons is now forced to litigate in multiple forums. Both cases are in their infancy. (*See* Doc. 14.) To proceed in two forums rather than one runs the risk of duplicating judicial effort, rendering potential judicial results, and wasting judicial resources. *See Grammar*, 482 F. Supp. 2d at 859 (finding there was certainty of piecemeal litigation where Canadian action and federal action were proceeding at the same time).

Pepper argues that piecemeal litigation is not a concern as the Court would be able to apply principles of res judicata and collateral estoppel. *See S2 Yachts, Inc*., 855 F. App'x at 279. While the Court is able to apply legal theories to its cases and evaluate the impact of potentially conflicting rulings, doing so comes at the expense of time and resources for the Court and parties. Further, this argument does not directly address why duplicate actions would not result in piecemeal litigation. If anything, Pepper's argument demonstrates that additional resources will surely need be allocated to navigate piecemeal litigation. Because simultaneous proceedings will likely result in piecemeal litigation, this factor strongly weighs in favor of abstention.

**4. The Order in Which Jurisdiction Was Obtained**

This Court obtained jurisdiction in this suit after Pepper obtained jurisdiction in Canada. The order in which federal jurisdiction was obtained and the seeming forum shopping involved weighs in favor of abstention. In *Grammar*, the district court found that the fourth factor favored abstention where the plaintiff filed a parallel proceeding in Canada two months prior to filing an

action in the United States. 482 F. Supp. 2d at 859. As in that case, this fourth factor favors abstention.

**5. Source of Governing Law**

Pepper asserts that as the Project is located in Colerain Township, Ohio, Ohio law would apply per the terms of the parties' agreements. (*See* Doc. 4-1 at PageID 29, 79.) Irons does not dispute the application of Ohio law to this case. While no federal law is at issue, a federal court sitting in Ohio is accustomed to applying Ohio law.

However, Pepper filed suit in the Court of King's Bench of Alberta knowing the underlying state law of Ohio would be at issue. Pepper conceded that a Canadian court would be capable of interpreting Ohio law when it filed suit there. *See Grammar*, 482 F. Supp. 2d at 859 (fifth factor weighed in favor of abstention where no federal law was at issue and the parties were engaged in a contract dispute). On balance, the fifth factor is neutral.

**6. Adequacy of the Foreign Court to Protect the Federal Plaintiff's Rights**

Both forums are adequate to protect Pepper's rights and were selected by Pepper. By initially filing suit in Canada, Pepper concedes that it finds the Canadian forum adequate to protect its rights. This factor weighs in favor of abstention. Further, "[n]umerous courts have found the Canadian justice system comports with our notions of due process and fair play." *Grammar*, 482 F. Supp. 2d at 860 (citing cases).

**7. Relative Progress of Each Proceeding**

Both proceedings are in their infancy, but the Canadian Action is further along, where the parties have a proposed discovery plan and proposed trial date Irons has not even filed a responsive pleading to the Complaint in this case. (*See* Henderson Dec., Doc. 20-1 at PageID 176–77 (attesting to status of Canadian Action).) There have been no significant rulings on the

merits in either action. This factor therefore slightly favors abstention. *See also Grammar*, 482 F. Supp. 2d at 859 (finding the seventh factor weighed in favor of abstention when evaluating a similarly postured Canadian proceeding).

**8. The Presence of Concurrent Jurisdiction**

The presence of concurrent jurisdiction is neutral, as both courts have jurisdiction. *See Grammar*, 482 F. Supp. 2d at 859 (finding eighth factor to be a "wash" in an analogous case).

**C. Abstention is Warranted**

Although no one factor is dispositive and the Court need not apply a mechanical checklist, the majority of the *Colorado River* factors favor abstention in this case. Factors 2, 3, 4, 6, and 7 favor abstention. Factor 1 supports retaining jurisdiction, and factors 5 and 8 are neutral. The Court strongly considers the risk of piecemeal litigation, factor 3, along with Pepper's selection of the foreign forum as an appropriate place to bring its lawsuit in the first place. Pepper here has filed two lawsuits and expects them to proceed in two places, at double the cost and effort, and presumably, to double its chance of success. To have the parties litigating the same dispute in two forums, both at Pepper's selection, suggests gamesmanship and forum shopping and significantly raises the risk of inconsistent rulings and judicial inefficiency. For these reasons, the *Colorado River* factors weigh in favor of abstention.

**IV. CONCLUSION**

Defendant's Motion to Stay (Doc. 15) is **GRANTED**. The parties are to notify the Court within 30 days of a resolution of the Canadian Action.

**IT IS SO ORDERED**.

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court